SR INTERNATIONAL BUSINESS INSURANCE CO. LTD., Plaintiff–Counterclaim Defendant,

v.

WORLD TRADE CENTER PROPERTIES, LLC, et al., Defendants–Counterclaimants.

World Trade Center Properties, LLC, et al., Counterclaimants,

v.

Allianz Insurance Company, et al., Additional Counterclaim–Defendants.

No. 01 Civ. 9291(MBM).

United States District Court, S.D. New York.

Aug. 11, 2006.

*See also* 445 F.Supp.2d 320.

Marc Wolinsky, Esq., Gordon M. Mead, Jr., Esq., Meredith L. Turner, Esq, William Edwards, Esq., Wachtell, Lipton, Rosen & Katz, New York, NY, Attorneys for defendants-counterclaimants World Trade Center Properties LLC, Silverstein Properties, Inc., Silverstein WTC Mgmt. Co. LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 4 World Trade Center LLC, and 5 World Trade Center LLC.

Milton H. Pachter, Esq., Megan Lee, Esq., Timothy G. Reynolds, Esq., Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, Attorneys for defendant-counterclaimant the Port Authority of New York and New Jersey.

Blair G. Connelly, Esq., Peter Rosen, Esq., Latham & Watkins LLP, New York, NY, Attorneys for defendant-counterclaimant WTC Retail LLC (f/k/a Westfield WTC LLC).

Harvey Kurzweil, Esq., John E. Schreiber, Esq., Dewey Ballantine LLP, Robert J. Morrow, Esq., Hunton & Williams LLP, New York, NY, Attorneys for counterclaim defendants Gulf Insurance Company and Travelers Indemnity Company.

Michael H. Barr, Esq., Sandra D. Hauser, Esq., Edward J. Reich, Esq., Sonnenschein Nath & Rosenthal LLP, New York, NY, Attorneys for counterclaim defendant Royal Insurance Company.

Christopher S. Finazzo, Esq., Robert F. Cossolini, Esq., Michael Mernin, Esq., Budd Larner, P.C., New York, NY, Attorneys for counterclaim defendant Employers Insurance Company of Wausau.

## OPINION AND ORDER

MUKASEY, District Judge.

Royal Indemnity Company, one of the insurance companies party to the ongoing litigation in this court over the amount of insurance recoverable for the destruction of the World Trade Center complex ("WTC") on September 11, 2001 ("9/11"), moves to enjoin a declaratory judgment action brought in the New York State Supreme Court ("the state action") by the Port Authority of New York and New

Jersey, the Silverstein Parties,[1] and WTC Retail LLC (collectively, "the Insureds"). In the state action, the Insureds seek a declaration that the "Conceptual Framework" agreed upon to redevelop the WTC will not affect recovery rights under the property insurance policies binding Royal and six other insurer[2] (collectively, "the Insurers"). Royal, joined by Travelers, Gulf, and Wausau, asks this court to enjoin the state action pursuant to the All Writs Act, 28 U.S.C. § 1651 (2000), and exceptions to the Anti–Injunction Act, 28 U.S.C. § 2283. Because an injunction against the state action would not fall within any of the narrow exceptions to the Anti–Injunction Act, Royal's motion is denied.

## I.

Familiarity with the facts giving rise to the nearly five years of coverage litigation in this court is assumed. By the time the Insureds filed the state action on June 26, 2006, this court had resolved numerous questions involving the policies and conditions binding, *inter alia,* all parties to the state action. Summary judgment motions are still pending, and six of the Insurers are engaged in an ongoing appraisal proceeding to determine the value of three categories of damage or expense set forth in the pertinent insurance policies.[3]

The subject of the state action is a "Conceptual Framework" ("the Framework") agreed upon by the Insureds on April 26, 2006, to "ensure the prompt redevelopment" of the WTC. (State Action Compl. ¶ 1) Under the Framework, the Silverstein Parties would cede control of the development of the One World Trade Center site (the Freedom Tower site) and the site now occupied by the Deutsche Bank building (Site 5) to the Port Authority, while maintaining control over the development of three sites on Church Street (Sites 2, 3, and 4). (*Id.* ¶ 2) WTC Retail, a subsidiary of the Port Authority that may be acquired by a Silverstein-controlled entity, would develop the retail component. (*Id.*) The insurance proceeds still collectible under the policies in effect on 9/11 would be allocated to reflect the new division of rebuilding responsibilities. (*See id.* ¶ 33) Because financing of the rebuilding plan contemplated by the Framework relies on the availability of the remaining insurance proceeds, the Insureds sought assurance from the WTC insurers that the Framework would not violate anti-assignment provisions in the applicable insurance policies. (*Id.* ¶ 35) Ultimately, the Insureds were not satisfied with the responses they received from Royal and the six other Insurers. (*See id.* ¶ 36)

On June 26, 2006, the Insureds filed a declaratory judgment action against the Insurers in the Supreme Court of New York State, New York County. The Insureds' complaint contains a single cause of action and seeks a declaration that "the Conceptual Framework, and the agreements and transactions contemplated therein, will not affect adversely in any fashion plaintiffs' recovery under the World Trade Center Property Insurance

---

**1.** The Silverstein Parties are World Trade Center Properties LLC; Silverstein Properties, Inc.; Silverstein WTC Mgmt. Co. LLC; 1 World Trade Center LLC; 2 World Trade Center LLC; 4 World Trade Center LLC; and 5 World Trade Center LLC.

**2.** The defendants in the state action are Royal, Allianz Global Risks U.S. Insurance Company (f/k/a Allianz Insurance Company), Industrial

Risk Insurers, Travelers Indemnity Company, Gulf Insurance Company, Zurich American Insurance Co., and Employers Insurance Company of Wausau.

**3.** Wausau, whose coverage is governed by the "WilProp" form, is not involved in the appraisal proceeding.

Program and, in particular, that the Conceptual Framework, and the agreements and transactions contemplated therein, do not constitute an impermissible assignment that reduces the recovery available to the Insureds." (*Id.*, Wherefore Clause, ¶ A) The complaint asks also that the Supreme Court retain jurisdiction "to assure that each of the defendant[s] complies fully with its ongoing insurance coverage obligations," and that the Court award plaintiffs the costs of bringing suit. (*Id.* ¶¶ B, C)

The Insurers removed the state action to this court on June 28, 2006, but it was remanded for lack of subject matter jurisdiction on August 3, 2006. *See Port Auth. of N.Y. & N.J. v. Allianz Ins. Co.*, No. 06 Civ. 5002(MBM), 2006 WL 2175647 (S.D.N.Y. Aug.3, 2006).

## II.

◼ The Anti–Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The Act is 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions.'" *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir.1999) (*quoting Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286, 90

S.Ct. 1739, 26 L.Ed.2d 234 (1970)). "[S]ince the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction." *Atl. Coast Line R.R. Co.*, 398 U.S. at 287, 90 S.Ct. 1739; *see also Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 631, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977) (plurality opinion) ("[T]he prohibition is not to be whittled away by judicial improvisation.") (*quoting Amalgamated Clothing Workers of Am. v. Richman Bros.*, 348 U.S. 511, 514, 75 S.Ct. 452, 99 L.Ed. 600 (1955) (internal quotation mark omitted)). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Ret. Sys. of Ala. v. J.P Morgan Chase & Co.*, 386 F.3d 419, 425–26 (2d Cir.2004) (*quoting Atl. Coast Line R.R. Co.*, 398 U.S. at 297, 90 S.Ct. 1739).

## III.

Royal does not allege that Congress has expressly authorized an injunction against the state action, *see generally Vendo Co.*, 433 U.S. at 631–639, 97 S.Ct. 2881, or that an injunction is required to protect or effectuate a judgment by preventing the relitigation of an issue actually decided by this court,[4] *see generally MLE Realty*, 192

---

4. Royal emphasizes that this court addressed "precisely the type of claim" that the Insureds allege in the state action, when it "issued a lengthy opinion addressing the question of whether ... [the] rental insurance claim [of WTC Retail's former incarnation] 'was validly assigned to the Port Authority as an already-accrued claim for damages.'" (Royal Mem. 7 (*quoting SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props.*, LLC, 375 F.Supp.2d 238, 245 (S.D.N.Y.2005); (Royal Reply Mem. 5–6)

With good cause, Royal never describes that opinion as a judgment requiring an injunction to protect or effectuate. After all, the Framework involves a different reconfiguration of responsibilities and rights than was at issue earlier. That this court decided a previous assignment dispute does nothing more than reveal a *possibility of concurrent jurisdiction* over the present assignment dispute. As explained in detail below, it does not suggest

F.3d at 261–62. Royal relies solely upon the exception to the Anti–Injunction Act that permits a federal court to enjoin a state proceeding "where necessary in aid of its jurisdiction." [5] 28 U.S.C. § 2283.

■ The aid-of-jurisdiction exception to the Anti–Injunction Act implies that "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. Co.*, 398 U.S. at 295, 90 S.Ct. 1739; *see also Kline v. Burke Constr. Co.*, 260 U.S. 226, 229, 43 S.Ct. 79, 67 L.Ed. 226 (1922) ("[W]here a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court.") The exception has been construed narrowly by the Supreme Court and the Second Circuit—limited to cases based on *in rem* or *quasi in rem* jurisdiction, and the rare occasion when the litigation itself can be treated as a *res*, most notably in complex multidistrict actions on the verge of settlement. It is settled law that "a district court may not

issue an injunction simply to be the first court to reach a judgment and thereby avoid issues" of preclusion and prevent duplicative litigation. *Ret. Sys. of Ala.*, 386 F.3d at 429 (*citing Vernitron Corp. v. Benjamin*, 440, F.2d 105, 108 (2d Cir. 1971)); *see also Atl. Coast Line R.R. Co.*, 398 U.S. at 295, 90 S.Ct. 1739 (holding that, where "state and federal courts had concurrent jurisdiction" over a dispute involving the legality of picketing by a union, "neither court was free to prevent either party from simultaneously pursuing claims in both courts").

■ Notwithstanding Royal's energetic effort to squeeze the WTC coverage litigation into the narrow aid-of-jurisdiction exception, "[t]he suits at issue here are *in personam* actions ... disputing the interpretation of a contract" and "[t]he existence of the state court action does not in any way impair the jurisdiction of the federal court or its ability to render justice." *Standard Microsystems Corp. v. Tx. Instruments Inc.*, 916 F.2d 58, 60 (2d Cir. 1990). Even accepting Royal's contention, still speculative at this point, that the "overlapping issues" in the state action and before this court are "indisputable and expansive," [6] the Anti–Injunction Act prohib-

that the state action risks interfering with this court's jurisdiction.

**5.** This language is similar to language in the All Writs Act, which grants federal courts the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). If a court's "injunction [is] in fact necessary in aid of its jurisdiction, then the injunction [is] authorized by the All Writs Act, and [is] not barred by the Anti–Injunction Act." *Ret. Sys. of Ala.*, 386 F.3d at 425. If the injunction is "not necessary in aid of the [court's] jurisdiction, then it exceed[s] the [court's] authority under the All Writs Act and—in the absence of another applicable statutory exception—violate[s] the Anti–Injunction Act." *Id.* "[C]ases

interpreting the 'necessary or appropriate in aid of their respective jurisdictions' language of the All Writs Act are useful in interpreting the 'necessary in aid of its jurisdiction' language of the Anti–Injunction Act, and *vice versa.*" *Id.* at 425 n. 5.

**6.** For example, Royal claims that (1) the Framework allows for the building of a hotel instead of office space on the WTC site, which will create a question of whether such a building would constitute a "replacement" of insured property; (2) the Framework contemplates rent concessions by the Port Authority to the Silverstein Parties, which may limit the business interruption recovery available to the Insureds; and (3) because the Framework "will inexorably affect the contractual rela-

its an injunction to ensure that this court is the first to decide those issues.

## A. *In Rem* and *In Personam* Actions

■ In *Kline v. Burke Construction Co.*, the Supreme Court held that only parallel *in rem* actions, and not *in personam* actions, create interference with federal jurisdiction that allows for an injunction against a state proceeding. 260 U.S. at 229–35, 43 S.Ct. 79; *see also Ret. Sys. of Ala.*, 386 F.3d at 426. The *Kline* Court stated:

> [A] controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. 260 U.S. at 230, 43 S.Ct. 79.

Thus, an injunction was not available where the federal court heard a breach of contract suit and the state court heard a suit in equity upon the same contract, "the two cases present[ing] substantially the same issues." *Id.* at 227–28, 235, 43 S.Ct. 79. On the other hand, a federal court might enjoin a state proceeding where "property has actually been seized under judicial process before a second suit is instituted," or "where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all suits of a like nature." *Id.* at 231, 43 S.Ct. 79 *(quoting Baltimore & Ohio R.R. Co. v. Wabash*, 119 F. 678, 680 (7th Cir.1902)). "Since *Kline*, the Supreme Court has never held that a district court may enjoin, as neces-

sary in aid of the district court's jurisdiction, a parallel *in personam* state action." *Ret. Sys. of Ala.*, 386 F.3d at 426.

■ Royal makes the fanciful argument that this court has jurisdiction over a res— "*i.e.*, the insurance proceeds available to the Insureds in the WTC Coverage Litigation." (Royal Mem. 5) Other courts in this District have both explicitly and implicitly refused to treat insurance proceeds as a res for purposes of the Anti–Injunction Act. *See, e.g., Md. Cas. Co. v. W.R. Grace & Co.*, 726 F.Supp. 62, 63–64 (S.D.N.Y.) (refusing to apply the aid-of-jurisdiction exception because a state coverage action by an insured against its insurers was "merely a parallel state *in personam* action" and, therefore, did not impair a federal declaratory judgment action by one of the insurers "concerning its obligations to defend and indemnify [the insured] under comprehensive general liability insurance policies regarding asbestos-related bodily injury and property damage lawsuits") *aff'd*, 889 F.2d 1231 (2d Cir.1989); *Mass. Cas. Ins. Co. v. Renstrom*, 831 F.Supp. 1088, 1088–89 (S.D.N.Y.1993) (suit in small claims court over disability insurance proceeds did not interfere with jurisdiction in a federal declaratory judgment action over those proceeds).

The one case that Royal cites in which the Court considered insurance proceeds a res in any context is *Sun Life Assurance Co. of Canada v. Gruber*, No. 5 Civ. 10194(NRB), 2006 WL 1520524 (S.D.N.Y. June 1, 2006). In that case, the Court found that for the purpose of determining whether to dismiss a federal action in deference to a parallel state action under *Colorado River Water Conservation Dis-*

---

tionship between" the Port Authority and Silverstein Parties, modifying the Silverstein Parties' replacement obligations under its prior leases with the Port Authority, the Framework "could directly impact" summary judg-

ment motions that "in part, seek to determine whether Silverstein in entitled to recover replacement cost dollars for costs incurred due to contractual requirements in its lease with the Port Authority." (Royal Mem. 8)

trict v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), insurance proceeds that *had been deposited with the Court* could be considered a res. *Sun Life Assurance Co.*, 2006 WL 1520524, at *3. Royal fails to mention that the insurance proceeds in *Sun Life* were in the possession of the Court, and Royal does not claim that any WTC insurance proceeds are in this court's possession. *Sun Life*, contrary to supporting Royal's position, suggests that where a federal court and state court have concurrent jurisdiction over coverage actions concerning how much an insurer must pay an insured under an insurance policy, but the policy proceeds have not been deposited with either court, those actions are simply *in personam* actions that risk duplicative litigation and preclusion, but do not threaten the jurisdiction of either court.

Like the federal action in *Kline*, the WTC coverage litigation in this court is a contract dispute over personal liability. Like the state action in *Kline*, the Insured's suit in the New York State Supreme Court might dispose of issues that will preclude this court from ruling on those issues (*See* Royal Mem. 7–8; Royal Reply Mem. 3–5). The Anti–Injunction Act prohibits enjoining the state proceeding in such circumstances. Rather, "[e]ach court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court," and "[w]henever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by application of the principles of *res adjudicata.*" *Standard Microsystems Corp.*, 916 F.2d at 61 *(quoting Vendo Co.*, 433 U.S. at 642, 97 S.Ct. 2881 *(quoting Kline,* 260 U.S. at 230, 43 S.Ct. 79)).

B. Litigation as *Res*

■ Alternatively, Royal relies on a line of cases that permit federal courts to enjoin state proceedings when the federal litigation itself can be analogized to a res. The principal Second Circuit case in this line is *In re Baldwin–United Corp.*, 770 F.2d 328 (2d Cir.1985). Recently, in *Retirement Systems of Alabama v. J.P Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004), the Circuit clarified the limited scope of *Baldwin–United's* holding. In doing so, the Court rejected the view, espoused now by Royal, that a case's complexity, duration, and public importance permit a federal court to enjoin a state proceeding simply because the state court might decide issues within the federal court's jurisdiction before the federal court does.

Considering a federal court's power to enjoin future state proceedings under the aid-of-jurisdiction language in the All Writs Act,[7] the *Baldwin–United* Court "recognized ... that an injunction may be appropriate even in *in personam* actions under certain limited circumstances." *Ret. Sys. of Ala.*, 386 F.3d at 426. *Baldwin–United* involved a consolidated, multidistrict, class action by some 100,000 annuity holders asserting claims under the Securities Act of 1933 and Securities Exchange Act of 1934 against 26 broker-dealers. *In re Baldwin–United Corp.*, 770 F.2d at 331. Eighteen of the defendants reached stipulated settlements with the plaintiff class, which the District Court provisionally approved before scheduling a fairness hearing. *Id.* at 332. Representatives of 40 states in the National Association of Attorneys General did not think the settlements adequately compensated the plaintiffs, and the State of New York gave notice of its intent to sue for restitution on behalf of

---

**7.** The Anti–Injunction Act applies only to state proceedings that have already been initiated.

*See In re Baldwin–United Corp.*, 770 F.2d at 335.

those members of the plaintiff class who were New York citizens. *Id.* at 332–33. The District Court enjoined the imminent New York action and other potential state actions. *Id.* at 333.

The Circuit affirmed the injunction, finding that "the potential for an onslaught of state actions posed more than a risk of inconvenience or duplicative litigation; rather, such a development threatened to 'seriously impair the federal court's flexibility and authority' to approve settlements in the multi-district litigation." *Id.* at 337 (*quoting Atl. Coast Line R.R. Co.*, 398 U.S. at 295, 90 S.Ct. 1739). "In effect, unlike the situation in the *Kline v. Burke Construction Co.* line of cases, the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a res over which the district judge required full control." *Id.* As to the 18 settling defendants, the injunction was "unquestionably 'necessary or appropriate in aid of' the federal court's jurisdiction." *Id.* at 338. As to the eight other defendants, the Court found that the injunction was proper "[s]o long as there [was] a substantially significant prospect that these 8 defendants [would] settle in the reasonably near future." *Id.*

Royal argues that "[c]ourts in this Circuit and others repeatedly have recognized that the [All Writs Act and Anti–Injunction Act], construed together, ... give a court the ability to determine properly the rights of the parties before it," and that "[i]nvoking this authority is particularly appropriate where the matter is one of public importance involving years of litigation." (Royal Reply Mem. 6–7) However, as explained in *Retirement Systems of Alabama,* "it was crucial to [the] analysis" in *Baldwin–United* "that most of the defendants had already settled, and that there was a 'substantially significant prospect that [the other eight defendants] will

settle in the reasonably near future.' " *Ret. Sys. of Ala.,* 386 F.3d at 428 (alteration in original) (*quoting In re Baldwin–United Corp.,* 770 F.2d at 338); *cf. In re Agent Orange Prod. Liab. Litig.,* 996 F.2d 1425, 1432 (2d Cir.1993) (finding an injunction against state proceedings permissible where the District Court had continuing jurisdiction to ensure that a settlement agreement was enforced according to its terms) *overruled in part on other grounds by Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002). In other words, whether a federal court exercising jurisdiction over an *in personam* action may enjoin a state proceeding despite Kline's restrictions does not depend on the case's public importance, complexity, or length of pendency in federal court, but on the proximity of a final resolution that a state action would not merely complicate or impede, but actually undermine. *Retirement Systems of Alabama* involved a consolidated class action against WorldCom, whose "massive restatement of its financial statements[ ] precipitat[ed] the filing of numerous individual and class actions in state and federal courts across the country," and led to "the largest bankruptcy filing in United States history." 386 F.3d at 421–22. Despite the nationwide import of that case, its formidable complexity, and the setting of a trial date, the Second Circuit held that the Anti–Injunction Act did not permit an injunction against a state proceeding "aris[ing] from and plead[ing] the same course of conduct" so that the federal court could be the *"first* court to hold a trial on the merits" and avoid the effects of collateral estoppel. *Id.* at 423, 429. In a passage that bears quoting in full in order to dispel Royal's contention that this court cannot "properly" determine the rights of the parties before it if the state action proceeds, the Second Circuit observed:

There is no reason why [a] state court cannot or should not determine issues of fact and state law relevant thereto as they come up in the state litigation. The subsequent effect of collateral estoppel, far from requiring the federal court to stay proceedings in the state court, is a result which should be welcomed to avoid the task of reconsidering issues which have already been settled by another competent tribunal. *Id.* at 429 (alteration in original) (*quoting Vernitron Corp.*, 440 F.2d at 108).

Like the WorldCom litigation, the WTC coverage litigation is complicated, time-consuming, and sensitive. Moreover, and regrettably, this court is aware of no fact that suggests the parties are on the verge of settlement: in fact, the end is nowhere in sight. An injunction against the state action would serve no purpose other than to preserve this court's prerogative to rule on coverage issues before the state court does—a purpose that does not qualify for the aid-of-jurisdiction exception to the Anti–Injunction Act.

■ Royal's attempts to limit the application of *Retirement Systems of Alabama* are unavailing. Royal states incorrectly that the Second Circuit held only that, when settlement was not imminent, an injunction was impermissible to prevent delay. (Royal Reply Mem. 9) The Court reached that question only after deciding as an initial matter that a federal court cannot enjoin state proceedings to allow it to resolve questions of fact and law before the state court does. *See Ret. Sys. of Ala.*, 386 F.3d at 429. It is irrelevant that the plaintiffs in the state action in *Retirement Systems of Alabama* were not parties to the federal action. *Id.* at 423. The state action in that case arose from and pleaded the same conduct alleged in the federal action, *id.*, and thus created a potential for precluding the adjudication of issues in

federal court similar to Royal's allegations of what will happen should I not enjoin the state action here. Finally, Royal claims that the "Insureds ... do not even attempt to explain, as the *Retirement Systems* Court did with respect to the situation before it, how the [state action] could proceed without seriously impairing the authority of this Court to determine the issues in front of it in the WTC Coverage Litigation." (Royal Reply Mem. 9) But, as explained repeatedly above, the risk that a state court will rule on the same issues—whether or not they concern the same parties—before a federal court has the chance to do so, is not considered an impairment to the federal court's jurisdiction.

In *Retirement Systems of Alabama*, the Court rejected analogies to cases where other Circuits had affirmed injunctions against state proceedings even though the actions before the district courts were *in personam* and not on the cusp of settlement. *See* 386 F.3d at 429–30. Similarly, the cases from other Circuits that Royal cites in support of its position are plainly distinguishable from the current circumstances, and would be of no avail even in the absence of *Baldwin–United* and *Retirement Systems of Alabama*. For example, Royal says that the Fifth Circuit securities fraud case *Newby v. Enron Corp.*, 338 F.3d 467 (5th Cir.2003), "is particularly instructive" because the Court "placed particular emphasis on the fact that, like here, the district judge had ruled on 'numerous motions and has been heavily engaged in the considerable task of managing this complex litigation, including issuing a comprehensive pre-trial scheduling order.'" (Royal Reply Mem. 7–8 (*quoting Newby*, 338 F.3d at 469)) Yet as the Second Circuit noted in *Retirement Systems of Alabama*, *Newby* involved motions in state court for injunctive relief that "could expose the ... defendants to

serious risk" and "duplicated relief granted by the federal court and thus collaterally attacked the district court's ruling." *Ret. Sys. of Ala.*, 386 F.3d at 430 *(quoting Newby*, 338 F.3d at 475). The *Newby* Court pointed out that the District Court in that case had barred the plaintiffs only from seeking injunctive relief in state court without asking permission from the federal court, not from proceeding in state court at all. *Newby*, 338 F.3d at 476. Like the situation in *Retirement Systems of Alabama*, the WTC coverage litigation "does not involve duplicative motions for injunctive relief, and does not expose [the Insurers] to the risk of inconsistent injunctions. It only risks subjecting [them] to simultaneous litigation in federal and state courts—a familiar feature of our federal system." *Ret. Sys. of Ala.*, 386 F.3d at 430. Moreover, Royal seeks a blanket injunction preventing the Insureds from litigating the "claims asserted in [the state action] in any forum, action or case whatsoever, outside of the pending litigation" in this court. (Royal Mem. 1) Such an injunction is plainly outside the scope of *Newby*.

The other non-Second Circuit cases that Royal includes in its list are equally inapposite because they involve concluded settlements, specific orders by federal courts

that state proceedings could interfere with, the disposition of a *res* despite technical *in personam* status, or some combination of the above. *See In re Diet Drugs*, 369 F.3d 293, 306 (3d Cir.2004) (a district court has authority, under the aid of jurisdiction exception, to issue an injunction against claims for punitive damages in state court because the state proceedings would undermine a settlement in federal court that prohibited such claims); *United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1009–10, 1013–15 (9th Cir.1999) (affirming an injunction in a suit over water rights, because, "although equitable actions to quiet title are technically *in personam* actions," water adjudications are properly considered *in rem*, and because the District Court had expressly retained jurisdiction over specific final decrees whose modification the parties were disputing[8]); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 879–82 (11th Cir.1989) (affirming an injunction where the federal court had entered a final judgment pursuant to a settlement agreement and explicitly retained jurisdiction over the case); *United States v. Dist. of Columbia*, 654 F.2d 802, 803–05, 809–811 & n. 16 (D.C.Cir.1981) (affirming, under both the aid-of-jurisdiction and the protect-or-effectuate exceptions, an injunction against en-

---

**8.** Royal makes much of the Insureds' request that the state court "[retain] jurisdiction to assure that each of the defendant[s] complies fully with its ongoing insurance coverage obligations." (State Action Compl., Wherefore Clause ¶ B) Royal argues that "[t]here can be no clearer proof that the Insureds seek to interfere with the indisputable jurisdiction of this Court over these very 'obligations.' " (Royal Reply Mem. 1) Even if the clause could be read to apply more broadly than to the specific coverage questions before the state court regarding the Framework, and I do not think it can be, I reiterate that state court jurisdiction over the same claims and parties that a federal court has jurisdiction over does not in itself constitute interference with that

jurisdiction. Moreover, I have never issued an order reserving jurisdiction over all possible coverage questions arising out of WTC property insurance. On the other hand, I have stated that on a motion-by-motion basis I may decide questions of law that go directly to the three values being calculated in the appraisal proceeding involving six of the Insurers. *See SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC*, No. 01 Civ. 9291(MBM), 2006 WL 2060464, at *6 (S.D.N.Y. July 25, 2006). Should there come a time when the Insurers can specify a question being litigated in state court that is directly and clearly related to the limited task of the appraisal panel, then perhaps a narrowly tailored injunction might prove necessary.

forcement of a state order that would have impaired the District Court's ability to enforce a prior order that endorsed a particular site for sludge disposal); *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 501 F.2d 383, 383–84 (4th Cir.1974) (affirming an injunction in a school desegregation case where "the pending state suit could affect the Board's efforts to comply with previous federal court desegregation orders").

\*    \*    \*    \*    \*    \*

Because an injunction against the state action would serve no other purpose than to prevent duplicative litigation and the preclusive effect of state rulings, the aid-of-jurisdiction exception to the Anti–Injunction Act does not apply and Royal's motion is denied.

SO ORDERED.