**HINDS COUNTY, MISSISSIPPI,**
Plaintiff,

v.

**WACHOVIA BANK N.A.,**
et al., Defendants.

**In re Municipal Derivatives Antitrust Litigation.**

No. 08 Civ. 2516.
08 MDL No. 1950.

United States District Court,
S.D. New York.

July 28, 2011.

Jeffrey B. Gittleman, Barrack, Rodos & Bacine, Eugene A. Spector, William G. Caldes, Jeffrey L. Spector, Spector, Roseman & Kodroff Willis, P.C., Robert Gerard Eisler, Hausfeld L.L.P., Howard J. Sedran, Laurence S. Berman, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, Roland Gustaf Riopelle, Sercarz & Riopelle, L.L.P., Arun Srinivas Subramanian, Seth D. Ard, William Christopher Carmody, Susman Godfrey LLP, Magda Maria Jimenez, Boies, Schiller & Flexner, LLP, Daniel Edward Seltz, Steven E. Fineman, Lieff Cabraser Heimann & Bernstein LLP, Bernard Persky, Hollis L. Salzman, Labaton Sucharow, LLP, John Douglas Richards, Michael Morris Buchman, Pomerantz Haudek Block Grossman & Gross LLP, Sharon Kunjumon Robertson, Cohen Milstein Sellers & Toll P.L.L.C., Imtiaz A. Siddiqui, Cotchett, Pitre & McCarthy, Peter J. Phillips, Lucas & Mercanti, LLP, New York, NY, David R. Woodward, Heinrichson, Siegel, P.L.L.C., Jack A. Simms, Jonathan Shaw, Matthew Friedrich, Tanya S. Chutkan, William A. Isaacson, Boies, Schiller & Flexner LLP, Megan E. Jones, Michael D. Hausfeld, Hausfeld, LLP, Christopher J. Cormier, Richard A. Koffman, Cohen Milstein Sellers & Toll PLLC, Washington, DC, Dylan J. McFarland, Vincent J. Esades, Heins Mills & Olson, P.L.C., Minneapolis, MN, Michael E. Moskovitz, William H. London, Freed Kanner

London & Millen LLC, Bannockburn, IL, Erica W. Harris, H. Lee Godfrey, Susman Godfrey LLP, Houston, TX, Precious Tyrone Martin, Office of Assemblyman Richard Brodsky, Elmsford, NY, Andrew Kingsdale, Eric B. Fastiff, Joseph Richard Saveri, Richard M. Heimann, Lieff Cabraser Heimann & Bernstein, LLP, G. Scott Emblidge, James A. Quadra, Sylvia Sokol, Moscone, Emblidge & Quadra, LLP, Charles Andrew Dirksen, Joseph M. Barton, Pamela A. Markert, Solomon Cera, Gold Bennett Cera & Sidener, LLP, Jayne A. Peeters, Allan Steyer, D. Scott MacRae, Henry A. Cirillo, Jill M. Manning, Margaret K. Aleks, Steyer Lowenthal Boodrookas Alvarez & Smith LLP, Christopher L. Lebsock, Jon T. King, Michael P. Lehmann, Hausfeld LLP, Louise H. Renne, Renne Sloan Holtzman Sakai LLP, San Francisco, CA, Nanci E. Nishimura, Daniel R. Sterrett, Steven N. Williams, Cotchett, Pitre & McCarthy, Burlingame, CA, William V. Reiss, Labaton Sucharow, LLP, Wilmington, DE, Marc M. Seltzer, Susman Godfrey, L.L.P., Los Angeles, CA, Aron K. Liang, Cotchett, Pitre & McCarthy, Burlingame, CA, Rudolph L. Ditrapano, Joshua Israel Barrett, Sean Patrick McGinley, Ditrapano Barrett & Dipiero, Charleston, WV, Christopher B. Hall, Cook, Hall & Lampros, LLP, Atlanta, GA, Barbara J. Hart, Scott Vincent Papp, Lowey Dannenberg Cohen & Hart, P.C., White Plains, NY, Billie J. Siddoway, Timothy C. Houpt, Jones Waldo Holbrook & McDonough, Salt Lake City, UT, for Plaintiffs.

J. David Jackson, Dorsey & Whitney, Minneapolis, MN, Joshua Michael Newville, Laurence T. Sorkin, Thorn Rosenthal, Cahill Gordon & Reindel LLP, Kana Anne Ellis, Richard T. Marooney, Jr., King & Spalding LLP, Bryan Paul Kessler, Debevoise & Plimpton LLP, Gregory Arthur Markel, Cadwalader, Wickersham & Taft LLP, Janelle Louise Filson, Thomas C. Rice, Joseph Franklin Wayland, Peri Lauren Zelig, Peter Coyne Thomas, Ryan Anthony Kane, Simpson Thacher & Bartlett LLP, Stephanie G. Wheeler, William Compton Hughes, Sullivan and Cromwell, LLP, Robert P. Lobue, Timothy Alan Waters, Patterson, Belknap, Webb & Tyler LLP, Ronald Steve Rauchberg, Proskauer Rose LLP, Brian M. Lutz, Gibson, Dunn & Crutcher, LLP, Evan A. Davis, Victor L. Hou, Cleary Gottlieb Steen & Hamilton, LLP, Michael Gordon Biggers, Bryan Cave LLP, Alec P. Ostrow, Stevens & Lee, Constantine D. Pourakis, Salomon Green & Ostrow, P.C., Anne Catharine Lefever, Mark Robert Hellerer, Pillsbury Winthrop Shaw Pittman, LLP, Steven R. Schindler, Schindler Cohen & Hochman, Anthony David Gill, John Vukelj, Rachel Allison Gupta, DLA Piper US LLP, Colleen J. O'Loughlin, McKee Nelson LLP, Kenneth Ian Schacter, Bingham McCutchen LLP, Shepard Goldfein, Skadden, Arps, Slate, Meagher & Flom LLP, Gustavo Manuel Gonzalez, Rachel Anne Owens, Willkie Farr & Gallagher LLP, James R. Levine, Davis & Gilbert LLP, Christopher Michael Egleson, Akin Gump Strauss Hauer & Feld, Anthony D. Boccanfuso, Arnold & Porter, LLP, New York, NY, Shannon M. Kasley, Kevin R. Sullivan, Patricia L. Maher, King & Spalding LLP, Charles F. Rule, Joseph J. Bial, Cadwalader, Wickersham & Taft, LLP, Christopher Michael Viapiano, Sullivan & Cromwell LLP, Jesse T. Smallwood, Williams & Connolly LLP, Richard William Beckler, Howrey LLP, Washington, DC, Brian N. Lasky, Danzig Fishman & Decea, White Plains, NY, William Perry Brandt, Bryan Cave LLP, Kansas City, MO, Robert J. Mathias, DLA Piper LLP, East Palo Alto, CA, Timothy E. Hoeffner, Saul Ewing LLP, Philadelphia, PA, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

By Order dated March 1, 2011 ("March 1 Order"), the Court denied the motion

("Settlement Motion") of Interim Co–Lead Class Counsel ("Class Plaintiffs") which sought an order enjoining defendant Bank of America, N.A. ("BoA") from proceeding with certain "opt-in" provisions of a settlement agreement entered into on December 7, 2010 (the "State Agreement") among BoA and the Attorneys General ("AGs") of twenty states (the "Settling States").[1] The Court further directed the parties to confer regarding the language of any notice or written communication ("Notice Packet") to be disseminated pursuant to the State Agreement to certain putative class members in this multidistrict litigation.

The Court now issues this Decision and Order to set forth the findings, reasoning and conclusions upon which the March 1 Order was founded.

## I. BACKGROUND

The factual allegations at issue in this action are set forth in detail in several prior decisions of the Court, including *Hinds Cnty., Miss. v. Wachovia Bank, N.A.,* 620 F.Supp.2d 499 (S.D.N.Y.2009) and *Hinds Cnty., Miss. v. Wachovia Bank N.A.,* No. 08 Civ. 2516, 2010 WL 1837823 (S.D.N.Y. Apr. 26, 2010), familiarity with which is assumed. Here the Court will briefly review only those facts relevant to the Settlement Motion.

### A. *Multidistrict Litigation*

In January 2007, BoA entered into the antitrust corporate leniency program administered by the United States Department of Justice, Antitrust Division (the "Antitrust Division") under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"). *See* Pub.L. No. 108–237, tit. II, §§ 201–221, 118 Stat. 661, 665–69. BoA's action was

prompted by the Antitrust Division's investigation into transactions of certain financial institutions involved in the municipal derivatives market. Multiple civil antitrust actions against various defendants were subsequently filed by various municipalities and other entities across the country alleging violations of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (" § 1") arising from bidding on municipal derivatives offerings. Pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation transferred all pending and subsequent related actions to this District on June 16, 2008, *see In re Municipal Derivatives Antitrust Litig.,* 560 F.Supp.2d 1386 (Jud.Pan.Mult.Lit. June 16, 2008) (the "MDL Order"), and ordered that they be assigned to this Court for coordinated or consolidated pretrial proceedings. In accordance with the MDL Order, thirty-three cases have thus far been transferred, consolidated with the designated lead case, and captioned as 08 MDL No. 1950 ("MDL No. 1950").

### B. *Class Action*

Class Plaintiffs filed their second consolidated amended complaint ("Class Complaint") on June 18, 2009 against sixteen corporate defendants ("Class Defendants"), including BoA. The Class Complaint alleges that Class Defendants conspired to fix, maintain or stabilize the price of, and to rig bids and allocate customers and markets for, municipal derivatives in violation of § 1. Class Plaintiffs purport to represent a class (the "Purported Class") consisting of:

All state, local and municipal government entities, independent government agencies and private entities that pur-

---

1. The March 1 Order also considered a separate but similar motion seeking more limited relief filed by several California municipalities

(the "Oakland Plaintiffs") who are plaintiffs in a related lawsuit consolidated with this action.

chased by competitive bidding or auction [m]unicipal [d]erivatives directly from a [p]rovider [d]efendant, or through a [b]roker [d]efendant, at anytime from January 1, 1992 through the present in the United States and its territories or for delivery in the United States and its territories.

(Second Am. Compl. (Docket No. 450) ¶ 183.)

Subsequently, the Oakland Plaintiffs filed a separate second amended complaint against the Class Defendants on December 15, 2009, alleging § 1 and California State antitrust claims on behalf of themselves and other California municipalities.

## C. *The State Agreement*

On December 7, 2010, twenty Settling States entered into the State Agreement with BoA, resolving potential claims against BoA for its alleged wrongdoing in the municipal derivatives industry.[2] The State Agreement was reached as part of a global $137 million resolution of claims against BoA by the Internal Revenue Service, the Securities and Exchange Commission, the Federal Reserve Board, the Office of the Comptroller of the Currency, and the Settling States.

Pursuant to the terms of the State Agreement, and in exchange for an agreement by the Settling States to release BoA from liability for any claims that could have been asserted by the AGs in their sovereign capacities as the chief law enforcement officers of their respective states, BoA committed to pay $62.5 million into a settlement fund ("Settlement Fund"). The Settlement Fund will be used to resolve the claims of additional eligible counterparties ("Eligible Counterparties") who entered into municipal deriv-

ative transactions with BoA between 1998 and 2003.

On its own, the Settling States' release under the State Agreement will not automatically affect the claims of any BoA counterparty or any potential member of the putative class in MDL No.1950. However, the State Agreement does provide that Eligible Counterparties—typically, governmental entities such as municipalities that have been identified as those most likely to have been injured by BoA's illegal conduct and who may be putative class members in MDL No.1950—will receive notice of their option to receive payment from the Settlement Fund and will have a defined period of time during which they may choose to sign on to the State Agreement. In order for an Eligible Counterparty to opt into the State Agreement, that Eligible Counterparty must agree to release BoA from liability for all claims arising out of alleged bid-rigging; price-fixing; conspiring to engage in unfair trade practices; and any anticompetitive, deceptive, unfair or fraudulent conduct relating to municipal derivatives. The release will thus encompass any claims against BoA that could potentially have been asserted in connection with MDL No.1950.

## D. *The State Agreement Dispute*

Class Plaintiffs loudly protest the implementation of the State Agreement. They argue that the State Agreement was negotiated improperly and without their participation, and that the Eligible Counterparties provisions operate effectively as a national opt-in settlement that will reach and extinguish class claims in MDL No.1950, at least with respect to claims

**2.** Since then, the number of Settling States now party to the State Agreement has grown     to twenty-eight.

asserted against BoA. Class Plaintiffs emphasize that they have waged costly litigation for over two years to establish the viability of their claims, whereas the Settling States filed no enforcement actions of their own, but rather stood aside while Class Plaintiffs undertook the heavy lifting. Class Plaintiffs argue that they met with BoA on dozens of occasions in 2009 and 2010 in an effort to reach a negotiated settlement, but that it was only in September 2010, when a final settlement appeared within reach, that they learned that the Settling States had intervened, as Class Plaintiffs characterize it, to hijack the settlement process and exclude Class Plaintiffs from further negotiations.

Based on this recitation of events. Class Plaintiffs request that the Court enjoin BoA from proceeding with the Eligible Counterparty opt-in provisions of the State Settlement. In the alternative, Class Plaintiffs seek to have the Court (1) supervise all communications sent to putative class members of MDL No.1950 concerning the State Agreement, and (2) subject the State Agreement to fairness procedures pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Finally, Class Plaintiffs argue that all of the Settling States must be joined in MDL No.1950 as necessary parties.

The Oakland Plaintiffs, for their part, seek more limited relief. They request that the Court (1) require BoA to notify putative California class members of their potential rights in MDL No.1950, and (2) supervise communications with putative California class members pertaining to a release of claims to ensure that such communications are accurate.

### E. *The March 1 Order*

Although the March 1 Order declined to grant the bulk of the relief sought by BoA,

the Court directed BoA and all those acting in concert with it not to disseminate or cause to be disseminated any Notice Packet to any putative class member of MDL No.1950 concerning the State Agreement or its opt-in provisions unless (1) the Court first approves such Notice Packet, and (2) BoA files with the Court a declaration from its counsel affirming that BoA's consent to the State Agreement and its terms was not achieved as the result, in whole or in part, of threats, coercion, intimidation or other "strong-arm tactics" by the AGs of the Settling States or any other third party.[3] Finally, the Court ordered the parties to confer and submit jointly for the Court's approval proposed language for any Notice Packet.

## II. DISCUSSION

### A. *The Court's Authority to Regulate Settlement*

Class Plaintiffs argue that the All Writs Act, 28 U.S.C. § 1651(a), and Rule 23 empower this Court to regulate any potential settlement between MDL No.1950 defendants such as BoA and members of the putative class. The Court considers each provision in turn.

#### 1. *All Writs Act*

■ Pursuant to the All Writs Act, "when a federal court has jurisdiction over its case in chief ... the All–Writs Act grants it ancillary jurisdiction to issue writs necessary or appropriate in aid of that jurisdiction." *In re Baldwin–United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir.1985) (internal quotation marks omitted). A court may issue an injunction pursuant to the All Writs Act where necessary to "prevent third parties from thwart-

---

**3.** BoA has since filed such a declaration from its counsel.

ing the court's ability to reach and resolve the merits of the federal suit before it." *Id.* at 338–39.

Class Plaintiffs argue that the All Writs Act authorizes this Court to prevent the Settling States from interfering with Class Plaintiffs' attempts to negotiate a settlement with BoA. In so arguing, Class Plaintiffs rely on the decision of the United States Court of Appeals for the Second Circuit in *Baldwin–United,* which upheld a district court's order enjoining several state Attorneys General from disrupting a class settlement. The Court is not persuaded that *Baldwin–United* compels, or even permits, the result Class Plaintiffs seek.

■ Whether or not a parallel proceeding may be enjoined pursuant to the All Writs Act depends not upon a particular action's "public importance, complexity, or length of pendency in federal court, but rather on the proximity of a final resolution that a state action would not merely complicate or impede, but actually undermine." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC,* 445 F.Supp.2d 356, 363 (S.D.N.Y.2006). Indeed, the injunction issued in *Baldwin–United* followed class certification and two years of court-supervised settlement discussions among the parties, which had resulted in successful resolution as to eighteen of twenty-six defendants. *See Baldwin–United,* 770 F.2d at 332. "[I]t was crucial to [the] analysis" in *Baldwin–United* "that most of the defendants had already settled, and that there was a substantially significant prospect that [the remaining defendants would] settle in the reasonably near future." *Retirement Sys. of Ala. v. J.P. Morgan Chase & Co.,* 386 F.3d 419, 428 (2d Cir.2004) (internal quotation marks omitted).

■ Here, by contrast, the Court has not yet certified a class, and Class Plain-

tiffs have reached an agreement with just one among the dozens of defendants still included in this active litigation. It is equally significant that the State Agreement can extinguish the claims of only those Eligible Counterparties who choose to become party to it; the State Agreement will not affect the claims of putative class members who decline to participate or are ineligible, nor will it affect the claims of any putative class members as to defendants other than BoA, of which more than a dozen still remain. Since this action will continue, regardless of how many potential plaintiffs choose to settle with BoA now via the State Agreement, it can hardly be said that the State Agreement risks interfering with this Court's flexibility or authority to consider and dispose of MDL No. 1950 as a whole. *See SR Int'l Bus. Ins. Co.,* 445 F.Supp.2d at 360. Under such circumstances, an All Writs Act injunction would be neither lawful nor appropriate.

#### 2. *Rule 23*

■ Class Plaintiffs also argue that, pursuant to Rule 23, the Court should enjoin BoA and those acting in concert with it from implementing the opt-in portion of the State Agreement. Alternatively, Class Plaintiffs request that the Court regulate potential settlements offered to putative class members by subjecting the State Agreement to fairness procedures. The Court does not find either proposed remedy to be warranted.

■ As indicated above, no plaintiff class has yet been certified in this litigation. Prior to certification, court approval is not required to compromise the individual claims of potential class members. *See In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132, 138 (2d Cir.1998); *see also Christensen v. Kiewit–Murdock Inv.*

*Corp.,* 815 F.2d 206, 213 (2d Cir.1987) ("Defendants do not violate Rule 23(e) by negotiating settlements with potential members of a class."). Admittedly, this rule may at times raise certain fairness concerns for counsel charged with representing the interests of a putative class. Here, for example, the law firms representing Class Plaintiffs and other individual plaintiffs in MDL No. 1950 have invested upwards of two years litigating the action through several rounds of dismissal motions. They also have engaged in extensive and, according to Class Plaintiffs, fruitful settlement negotiations with multiple defendants. No small element of injustice might arise were powerful third parties—such as governmental entities with law enforcement authority—to free-ride on such efforts, parachuting in late in the game to coax or coerce potential plaintiffs and named defendants from the litigation through successive private settlement agreements.[4] Such concern would be heightened if, as Class Plaintiffs have alleged here, the Settling States leveraged the threat of state criminal enforcement to coerce BoA into negotiating the State Agreement outside the presence of Class Plaintiffs and prior to finalizing a settlement with Class Plaintiffs. *See Baldwin–United,* 770 F.2d at 341 (expressing concern that the threat of state enforcement proceedings could be used "as a means of coercing the defendants into increasing a civil settlement offer to persons who might be represented by the state").[5]

Nevertheless, prior to certification,

even if [a] defendant should succeed in settling with so many [potential class members] that the court will be forced to deny class action status, plaintiff's complaint will remain untouched. As we have, in essence, already noted, plaintiff has no legally protected right to sue on behalf of other [potential plaintiffs] who prefer to settle; [Rule 23(e) ], requiring court approval of the dismissal or compromise of a class action, does not bar non-approved settlements with individual members which have no effect on the rights of others.

*Weight Watchers of Phila. v. Weight Watchers Int'l, Inc.,* 455 F.2d 770, 775 (2d Cir.1972); *see also PaineWebber Ltd. P'ships Litig.,* 147 F.3d at 137; *Christensen,* 815 F.2d at 213. In other words, prior to certification, "potential class members may leave the putative class at will." *PaineWebber Ltd. P'ships Litig.,* 147 F.3d at 138. Additionally, since a district court may not prevent an extrajudicial settlement prior to class certification, there would be no point in conducting a full-blown inquiry into the fairness of such a private settlement or the process by which such a settlement was negotiated.[6]

---

4. Indeed, since the March 1 Order issued, the *Settling States have reached similar private* settlements with MDL No.1950 defendants UBS AG, UBS Financial Services, Inc. and UBS Securities LLC, and with defendant JPMorgan Chase & Co. (*See* Docket Nos. 1339, 1536.)

5. In acknowledging this potential for unfairness in general, the Court passes no judgment on whether Class Plaintiffs' allegations or concerns have any basis in fact. Notably, both the Settling States and BoA strongly dispute Class Plaintiffs' characterization of the private negotiations. BoA's counsel has

provided a declaration, as required by the March 1 Order, stating that BoA's consent to the State Agreement and its terms was not achieved as the result, in whole or in part, of threats, coercion, intimidation, or other strong-arm tactics. The Court has no reason, and Class Plaintiffs have not proffered any specific grounds, to look behind those sworn statements.

6. Contrary to Class Plaintiffs' suggestion, the decision of the United States Court of Appeals for the Seventh Circuit in *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106 (7th Cir.1979) does not support their

■ That said, even prior to certification, a district court may, pursuant to Rule 23(d), regulate communications by parties and their counsel with putative class members. *See In re Initial Pub. Offering Sec. Litig.,* 499 F.Supp.2d 415, 418 n. 13 (S.D.N.Y.2007); *In re Currency Conversion Fee Antitrust Litig.,* 224 F.R.D. 555, 569 (S.D.N.Y.2004). In *Gulf Oil Co. v. Bernard,* the Supreme Court recognized that, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). *See also Erhardt v. Prudential Grp. Inc.,* 629 F.2d 843, 846 (2d Cir.1980) ("It is the responsibility of the court ... to safeguard [class members] from unauthorized, misleading communications from the parties or their counsel."). However, any order limiting communications "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil,* 452 U.S. at 101, 101 S.Ct. 2193.

■ Judicial supervision may be "particularly apt where a defendant attempts to alter the contours of the litigation or the availability of remedies." *Currency Conversion Fee Antitrust Litig.,* 224 F.R.D. at 569 (*citing Gulf Oil,* 452 U.S. at 99–100, 101 S.Ct. 2193). Indeed, at least one court in this District has held that a defendant may not contact potential class members for the purpose of altering the status of the pending litigation without judicial authorization. *See id.*

The Court's primary purpose in supervising communications is thus to ensure that potential class members receive accurate and impartial information regarding the status, purposes and effects of the class action. *See Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1203 (11th Cir.1985) ("Unsupervised, unilateral communications ... sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.").

■ In the face of these concerns, BoA and the Settling States respond, essentially, "trust us." They argue that judicial supervision of the notice process is unwarranted because the AGs are public servants whose primary aim is to serve the best interests of the citizens of their states. Yet, the Court's duty and authority under Rule 23(d) to protect the integrity of the potential class and the administration of justice, is "not limited only to those communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class." *Currency Conversion Fee Antitrust Litig.,* 224 F.R.D. at 569. "Certainly communications that seek or threaten to influence the choice of remedies are ... within a district court's discretion to regulate." *Id.* (*citing In re Sch. Asbestos Litig.,* 842 F.2d 671, 683 (3d Cir. 1988) (alteration in original)). Moreover, as *In re General Motors Corp. Engine Interchange Litig.* demonstrates, exceptional circumstances can arise in which even the roles of AGs as protectors of the public interest could exceed proper bounds and justify greater judicial oversight in situations such as those at issue here. *See*

cause. Not only did that case involve a certified class, but the fairness inquiry that the Seventh Circuit determined to have been lacking was required by reason of the irregular conduct of the Illinois Attorney General, who participated in settlement negotiations as both authorized class counsel and a representative of his state. *See id.* at 1131.

594 F.2d at 1131. *See also Baldwin–United,* 770 F.2d at 333, 337–38.

However pure the intentions of the Settling States maybe, the Court must ensure that potential class members receive notice of the State Agreement that conveys "objective, neutral information" about the nature of the claims pending before this Court, the potential remedies available, and the consequences of electing to opt out of the putative class via the State Agreement release. *Kleiner,* 751 F.2d at 1203. The Court finds such notice to be the narrowest possible relief that can protect the interests of the parties consistent with the policies of Rule 23, while still ensuring the effectiveness of the Court's jurisdiction over the instant litigation. *See Gulf Oil,* 452 U.S. at 102, 101 S.Ct. 2193.

## B. *Sovereign Immunity of the Settling States*

In opposing the Settlement Motion, the Settling States also argue that any equitable relief that the Court may direct towards BoA would circumscribe the conduct of the Settling States with respect to the implementation of the State Agreement. Such equitable relief, the Settling States assert, is therefore prohibited by the Eleventh Amendment. The Court disagrees.

The privilege of sovereign immunity enshrined in the Eleventh Amendment is designed to protect state governments' "abilit[ies] to exercise [their] sovereign functions without the interference of the judiciary." *Baldwin–United,* 770 F.2d at 340. It "thus bars suits against a state as the real party in interest, regardless [of] whether the state is nominally included as a defendant." *Id.* However, "when the state merely asserts the personal claims of its citizens, it is not the real party in interest and cannot claim parens patriae standing." *Id.* at 341. Eleventh Amendment sovereign immunity therefore does not prevent the issuance of injunctive relief against a state acting in a representative capacity. *See id.*

As an initial matter, it is not clear that the Court's management of this class action pursuant to Rule 23 through orders directed at the parties to this litigation should implicate any Eleventh Amendment privileges of the Settling States. Indeed, the Settling States cite no authority suggesting that the Court may not regulate the conduct of private litigants with regard to potential resolution of putative class claims merely because a defendant also has engaged in third-party negotiations with a sovereign state.

In any event, the equitable remedies prescribed by the Court here do not reach that portion of the State Agreement relevant to the Settling States' sovereign claims against BoA. Pursuant to the March 1 Order, the Court retains supervisory authority only over that portion of the State Agreement which would permit potential plaintiffs in this class action to join the State Agreement and gain access to the Settlement Fund in exchange for waiving any rights to proceed against BoA under the auspices of MDL No. 1950. To the extent that such relief imposes restrictions on the conduct of the Settling States, it impacts actions taken by the Settling States in a representative capacity and therefore falls outside the protection afforded by Eleventh Amendment immunity. *See id.* (affirming grant of injunction that "preclude[d] state officials from bringing actions in a de facto or de jure representative capacity on behalf of the plaintiffs" in a federal class action); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia,* 311 F.Supp. 149, 156 (S.D.N.Y.1970) (holding that a state was not a "real party in interest" sufficient to benefit from sovereign immunity where it established a receivership to "take title to any or all such

property ... for the benefit of all persons intervening in the said action and establishing an interest in such property").

### C. *Joinder*

█ Finally, Class Plaintiffs assert that the Settling States and any other state AGs who become party to the State Agreement in the future must be joined in this litigation pursuant to Federal Rule of Civil Procedure 19(a)(1). Class Plaintiffs take a somewhat unusual tack, however, in suggesting that such joinder is required to protect the interests of their adversary, BoA. Class Plaintiffs argue that without such joinder, BoA will be subject to substantial risk of double, multiple or otherwise inconsistent obligations. *See* Fed. R.Civ.P. 19(a)(1)(B)(ii). Notably, BoA does not appear to share this concern, since it opposes Class Plaintiffs' Settlement Motion here and seeks to implement the State Agreement according to its terms. In any event, the Court is not persuaded that joinder is warranted on the basis proposed by Class Plaintiffs, since any potential plaintiff who opts into the State Agreement will be required to release BoA from any claims which could have been asserted in this litigation. Such release should prevent any potential for multiple liability or inconsistent obligations.

### III. ORDER

For the reasons discussed above, the Court reaffirms its directives as set forth in its Order dated March 1, 2010 ("March 1 Order") (Docket No. 1253); and it is further

**ORDERED** that the motion of plaintiff City of Oakland and others (Docket No. 1213) is GRANTED in part and DENIED in part, to the extent set forth in the March 1 Order.

**SO ORDERED.**